23734

CONCERNED CITIZENS COMMITTEE FOR the ASHLEY RIVER, Dave and Penny Parker, Charleston County Legislative Delegation, Preservation Society of Charleston and County of Charleston, of whom Concerned Citizens Committee for the Ashley River is Appellant v. SOUTH CAROLINA COASTAL COUNCIL and D & D Enterprises, Respondents.

(423 S.E. (2d) 134)

Supreme Court

*Thomas R. Goldstein,* of *Belk, Cobb, Chandler & Goldstein,* Charleston, *for appellant.*

*C.C. Harness, III,* Charleston, *for respondent South Carolina Coastal Council.*

*Christopher M. Holmes,* Charleston, *for respondent D & D Enterprises.*

Heard Nov. 20, 1991; Decided Nov. 9, 1992.

Reh. Den. Dec. 8, 1992.

CHANDLER, Justice:

Concerned Citizens Committee for the Ashley River (Citizens) appeal Circuit Court's order affirming Coastal Council's grant of a permit to D & D Enterprises (D & D) to construct a marina on the Ashley River. We reverse.

## FACTS
Coastal Council, through its permitting committee, granted a permit to D & D for the construction and operation of a sixty slip marina on the Ashley River. Citizens appealed and, after an evidentiary hearing, Coastal Council issued its order affirming the grant. On review, Circuit Court affirmed, holding Coastal Council's decision was supported by substantial evidence.

## ISSUE
While other issues are raised, we need address only whether the record contains substantial evidence of a "demand" for the marina, as mandated by S.C. Code Regulation 30-12 (1976).

## DISCUSSION
### A. SCOPE OF REVIEW
Our review of Coastal Council's order is limited to a determination of whether the findings of Coastal Council are supported by substantial evidence. S.C. Code Ann. § 1-23-380(g) (1986); *Parker v. S.C. Public Service*

*Commission,* 281 S.C. 22, 314 S.E. (2d) 148 (1984). Substantial evidence is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion. . . . This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lark v. Bi-Lo, Inc.,* 276 S.C. 130, at 135-136, 276 S.E. (2d) 304 (1981) (quoting from *Consolo v. Fed. Maritime Comm.,* 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed. (2d) 131).

## B. ORDER OF COASTAL COUNCIL

Coastal Council regulations require, at the *threshold* stage of the permitting procedure, that a permit applicant establish a public "demand" for the project in question:

Applications for construction of marina and commercial dock facilities will be considered by the Coastal Council *only after* adequate demonstration by the applicant of *demand* for the facilities.

S.C. Code Regs. 30-12(E)(4)(j) (1976) (Emphases supplied). Without this requisite showing, Coastal Council has no legal ability to grant the permit.

In its order, Coastal Council found that "[d]emand exists for the marina." After a searching review of the record, we find no substantial evidence presented at any stage of this litigation to support this finding. Indeed, the testimony of Coastal Council's own permit administrator, Stephen Moore, reflects the absence of an existing demand for the marina.

Moore sought to establish demand, not on present need, but upon "our own experience that marinas sort of generate their own need," and that "I and members of my staff—have observed when marinas are built they fill up."[1]

This testimony does not address, as required by Regulation 30-12, a present need or demand for the marina.

At best, it represents a conjecture that the need will, in the future, be established. The fact that the marina may cre-

---

[1] We note that in his testimony Mr. Moore refers to a 1984 Charleston County study relating to "demand." This study is not in the exhibits or record on appeal and, therefore, it cannot be reviewed for its probative value.

ate a demand for wet moorage does not satisfy the requirement of need. *Cf. S.C. Wildlife Fed. v. S.C. Coastal Council,* 296 S.C. 187, 371 S.E. (2d) 521 (1988) (Public interest cannot be established on speculative economic benefit contingent upon completion of project).

Moreover, the applicant, D & D, offered no testimony of a demand for a marina in this area, candidly admitting numerous times that its "main purpose" was to secure a marina for the display and sale of boats:

> The purpose of our proposed expansion is to provide a place to display our complete line of products that we offer for sale . . .
>
> \*    \*    \*    \*    \*    \*
>
> We are thinking of adding slips of wet [docks], mainly in there for display of boats for sale . . . So the main purpose we are after, of course, is to put in boats for sale there.
>
> \*    \*    \*    \*    \*    \*
>
> Again, to re-emphasize what Larry has already said, the principal purpose is to be able to consolidate our boats that we have for sale, which presently are being stored at other marinas. . . .

Contrary to the opinion of the dissent, we hold that D & D's personal business motivation and uncorroborated assertions cannot be equated with a public need for the marina.

Further, the "variety of other evidence of demand" upon which the dissent relies is not competent evidence in this case. These statements were taken from the minutes of a Joint Legislative Delegation Meeting that occurred after Coastal Council's permitting committee had already issued the permit. These statements are not sworn testimony, nor were they made in any judicial proceeding or, in fact, any proceeding before Coastal Council.[2]

In short, no substantial evidence of an existing demand for the marina having been presented to the Council Hearing Officer, the Full Council or the Circuit Court,

---

[2] It is interesting to note that the Joint Delegation later testified before Coastal Council in opposition to the marina.

D & D was not entitled to a permit.[3]

Appellant's remaining exceptions need not be addressed.

Reversed.

GREGORY, C.J., and FINNEY and TOAL, JJ., concur.

HARWELL, J., dissenting in separate opinion.

HARWELL, Justice:

I respectfully dissent. In my opinion, the order of the circuit court should be affirmed because the issue of demand is not properly before this Court and because, even if it were, there is substantial evidence in the record establishing a demand for the marina.

As a threshold matter, I firmly believe that it is inappropriate for this Court to review the issue of whether D & D established a public demand for the marina. Concerned Citizens appealed the decision of the Permitting Committee on the grounds that the permit was contrary to various provisions of the Beachfront Management Act[1] and was inconsistent with Coastal Council's regulations in certain respects. However, the grounds for appeal did not state that Concerned Citizens was appealing the issue of demand.

When Concerned Citizens' appeal was heard by the hearing officer, Concerned Citizens specifically was precluded from presenting evidence regarding the issue of demand because it had not raised this issue in its grounds for appeal. However, in its final administrative order, Coastal Council reviewed all of the criteria required by the regulations for the issuance of a permit and included in its findings the conclusion that demand existed for the marina.

---

[3] The dissent states that the issue of demand is not properly before this Court. We disagree. Coastal Council's order concludes, without explanation, that demand exists for the marina. Citizens raised the issue of demand to the Circuit Court, which made a general ruling finding substantial evidence and adopting Coastal Council's order, thereby ruling on the issue. See Cook v. S.C. Dept. of Highways and Public Transportation, 420 S.E. (2d) 847, 849 (S.C. 1992) (Trial judge need not separately address each contention in administrative order in holding that order was supported by substantial evidence). A Rule 59(e) motion was not necessary. Moreover, in their exceptions, Citizens state that Regulation 30-12, of which demand is an element, was not complied with by Coastal Council. It is within our province to address this issue.

[1] S.C. Code Ann §§ 48-39-10 to -360 (1987 & Supp. 1991).

Concerned Citizens then appealed to the circuit court. In its notice of intent to appeal and petition for review, Concerned Citizens contended that the permit failed to show "a public need." It is questionable whether this issue could have been revived, as it was to raised in Concerned Citizens' grounds for appeal of the Permitting Committee's decision. Regardless, this issue was not ruled on by the circuit court and Concerned Citizens failed to make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Issues which are not ruled upon by the trial court may not be considered by the appellate court. *Murphy v. Hagan,* 275 S.C. 334, 271 S.E. (2d) 311 (1980).

Finally, on appeal to this Court, Concerned Citizens does not raise the issue of demand in any of its exceptions. The absence of an exception on an issue precludes appellate review of that issue. *Id.; see also Duck v. Jenkins,* 297 S.C. 136, 375 S.E. (2d) 178 (Ct. App. 1988) (an unchallenged finding of fact will not be disturbed by this Court on appeal). Based on the foregoing, I would hold that the issue of demand is not properly before this Court, and, therefore, cannot conceivably be a basis for reversal.

Furthermore, even if this procedural bar precluding review of the issue of demand were not present, I would still affirm the circuit court as I am thoroughly convinced that there is substantial evidence in the record of demand.

The majority opinion claims that D & D failed to offer testimony of a demand for the marina. However, this assertion is simply unsupported by the record. In its marina permit application submitted to Coast Council, D & D specifically stated that "the existing marina capacities are insufficient (as well as inefficient) to meet the current demand."

In addition, there is an entire section of the permit application entitled "Need for the Proposed Project." This section provides as follows:

Although several marina permits have been issued in the last several years, there continues to be a shortage of slips in the Charleston Metropolitan area. This shortage coupled with the unique location of his proposed marina (being able to service the North Charleston, Summerville and Berkeley County Areas) presents an opportunity to

relieve the pressure on existing marinas and promote quality boating in the coastal area.

Further, at the hearing on D & D's permit application, Pete Duncan, one of the owners of D & D, testified regarding the demand for the marina. He testified that the "purpose of our proposed expansion is to . . . offer a quality place for people to store their boats in water that presently we are not able to accommodate." At the evidentiary hearing, Larry Duncan, the other owner, testified that he and Pete Duncan decided to try to obtain a permit to expand their facilities because they had had requests from customers in the Goose Creek and the tri-county area, including North Charleston, to handle boats larger than they could currently accommodate. Pete Duncan testified that the reason they wanted to expand their marina to include wet slips was "to meet the requests on the part of some of our customers who would like to store their boat in the water up the river. These particular boats are of a size and configuration that enables us to not store them in the dry-storage facility we have." Thus, I believe that, contrary to the majority's holding, the Duncans did present testimony of a demand for the marina.

As the majority notes, Stephen Moore, Coastal Council's permit administrator, also testified regarding the demand for the marina. Moore testified that marinas "generate their own need" and that "when marinas are built they fill up." The majority opinion attacks this testimony on the ground that it "represents a conjecture that the need will, in the future, be established." However, in my opinion, Moore's testimony that marinas fill up quickly, along with his testimony that he knew of two marinas with waiting lists of over 200 people, definitively demonstrates demand for the marina.

The majority opinion also attacks Moore's testimony regarding a 1984 study done by Charleston County which found that there was a need for marinas and for water access in North Charleston. The majority opinion discounts Moore's testimony regarding the study because it was not part of the record on appeal. However, I believe t hat Moore was entitled to testify as to his knowledge of the study. Furthermore, since Concerned Citizens did not object to this testimony, it is improper for this Court to now challenge these undisputed facts.

In addition to the evidence of demand presented by the Duncans and the permit administrator, there was also a variety of other evidence of demand that a variety of other evidence of demand that was submitted at the early stages of the permitting process. This evidence can be summarized as follows:

>—Arnold Bainard stated that there was a need for the marina and that a recently built marine, not yet completed, was already sold out.
>—Wyatt Nettles stated that the facilities of Charleston County for the public were impossible to get in and out of on a weekend and that the marina was needed to take some of the traffic from these landings.
>—Bill Taylor stated that a boat bigger than 28 feet could not be trailed and that a marina was needed.
>—In a letter to Coastal Council, Al Collins noted that Mayor John Bourne spoke in favor of the marina because it would be the only marina within the confines of the City of North Charleston. Mr. Collins also noted that the demand for marina facilities was increasing.
>—In a letter to Coastal Council, George Lee stated that the facility was needed because boat owners upland had boats too large for dry storage.

Under the Administrative Procedures Act (APA), this Court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. S.C. Code Ann. § 1-23-380(g) (1986). Here, the majority improperly is substituting its judgment for that of Coastal Council on the issue of demand. Having carefully reviewed the record and exhibits, I concluded that the record clearly supports Coastal Council's findings. Thus, even if this issue were properly before this Court, I would hold that there is substantial evidence of demand for the facility, as demonstrated by the testimony mentioned above.[2] Accordingly, I would affirm.

---

[2] I note that the majority cites to *S.C. Wildlife Fed. v. S.C. Coastal Council*, 296 S.C. 187, 371 S.E. (2d) (1988), in support of its statement that: "The fact that the marina may create a demand for wet moorage does not satisfy the requirement of need." Regardless of the truth of this statement, the majority's reliance on *S.C. Wildlife* is misplaced. This case has nothing to do with marinas or demand and is simply inapplicable to the facts of this case.